**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**AERIAL T.,**

      **Plaintiff,**

  v.                                     **Civil Action 2:23-cv-4188
Chief Judge Algenon L. Marbley
Magistrate Judge Kimberly A. Jolson**

**COMMISSIONER OF
SOCIAL SECURITY,**

      **Defendant.**

**REPORT AND RECOMMENDATION**

Plaintiff, Aerial T., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI"). For the following reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

**I.  BACKGROUND**

Plaintiff protectively filed his application for SSI on June 21, 2021, alleging that he was disabled beginning October 1, 1994, due to a slipped disc in the lower back that required surgery, depression, anxiety, physical therapy for right knee, right wrist sprain, a learning disability, and sleep problems (insomnia). (R. at 666–72, 691). After his application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a telephone hearing on September 20, 2022. (R. at 425–45). Ultimately, the ALJ denied benefits in a written decision on October 20, 2022. (R. at 399–418). When the Appeals Council denied review, that denial became the Commissioner's final decision. (R. at 1–7).

Next, Plaintiff brought this action. (Doc. 1). As required, the Commissioner filed the administrative record, and the matter has been fully briefed. (Docs. 8, 11, 12, 13).

**A. Relevant Statements to the Agency and Hearing Testimony**

The ALJ summarized Plaintiff's hearing testimony as well as his statements to the agency as follows:

> At the hearing, [Plaintiff] testified that he is unable to work due to his impairments. He testified that he lives with his mother, her boyfriend, and his little brother. He further testified that he does not have a driver's license and walks most places. [Plaintiff] reported ongoing back problems, including his back giving out on him. He indicated having poor sleep and mental health issues, including anger problems. He testified that he is in counseling once per week, but still gets panic attacks caused by stress, which last 10 to 15 minutes. [Plaintiff] reported having trouble going up and down stairs, as it hurt his back and leg. Concerning activities of daily living, [Plaintiff] testified having problems bathing, but not dressing. He testified he can only lift maybe 15 pounds and cannot walk even a mile. He testified he can stand for about an hour, and stand for an hour to an hour and a half due to back and lower left side pain. He further testified that he enjoys riding bikes and playing video games, but the pain in his back impacts his ability to do these activities. He indicated not working in more than a year. [Plaintiff] reported that his overall condition also affects his ability to squat, bend, reach, concentrate, complete tasks, understand things, and get along with others. (Exs. 2E, Hearing testimony).

(R. at 408).

**B. Relevant Medical Evidence**

The ALJ discussed Plaintiff's mental health impairments as follows:

> Turning to the medical evidence, educational records show problems in school, with generally poor grades, and a learning disability, but he was able to complete high school. (Exs. 1F, 2F).
>
> *** Mental health treatment notes from September 22, 2021 at Mid-Ohio Psychological Services note depression and anxiety, but a logical thought process and alert and oriented x3. At a follow up therapy visit on December 1, 2021, he was noted to have been improving. His speech was normal and he was cooperative with a normal mood and affect. (Ex. 19F).
>
> [Plaintiff] continued both physical and mental health treatment during the remainder of 2021 and into 2022. (Exs. 20F-27F). In May 2022, [Plaintiff] presented to the emergency department voluntarily concerning his depression. He reported being upset at the outcome of a child support hearing where he was ordered to pay money for a DNA test and was not given visitation rights. He denied suicidal or homicidal ideations. A mental status examination was generally within normal limits, showing x4 orientation and intact thought processes. (Ex. 24F-53).

> Labs taken in July 2022 were generally within normal limits. He reported a good appetite and compliance with medication. He was living with his mother and was not working. He denied mood issues, and denied anger or depression, but had some anxiety around the fourth of July due to being around more people than usual. His medications were refilled and adjusted accordingly at that time. (Ex. 25F-14).
>
> *** He returned to Mid-Ohio Psychological Services later that month as well for further treatment. At that time, the goal of treating his depression and anxiety was to develop further emotional regulation skills to reduce worry, and anger, reducing "angry outbursts" from 5 to 6 per month to less than 3 per month. (Ex. 27F-6).
>
> Additional medical evidence was submitted after the hearing. (Exs. 28F, 29F). *** [Plaintiff] also underwent further mental health treatment, including a visit after reportedly making a statement that he was going to hurt himself. However, he adamantly denied being suicidal at that time. (Ex. 29F-23).

(R. at 408–09).

### C. The ALJ's Decision

The ALJ found that Plaintiff has not engaged in substantial gainful activity since July 21, 2021, the application date. (R. at 404). The ALJ determined that Plaintiff suffered from the following severe impairments: depressive disorder; anxiety disorder; history of borderline intellectual functioning; and lumbago with sciatica. (*Id.*). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment. (R. at 405).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except [Plaintiff] can occasionally climb ladders, ropes or scaffolds. He is limited to performing simple, routine, repetitive tasks but not at a production rate pace, such as one has with assembly line work. He can further tolerate occasional interactions with supervisors, coworkers, and the public. These interactions would be superficial, meaning interactions would be limited to the straightforward exchange of information, without negotiation, persuasion, conflict resolution, close teamwork, tandem work, or over the shoulder supervision. [Plaintiff] can tolerate occasional changes in duties and the work setting as well.

(R. at 407).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. at 410).

Plaintiff has no past relevant work. (R. at 411). Relying on the vocational expert's testimony, the ALJ concluded that Plaintiff could perform light exertional, unskilled jobs that exist in significant numbers in the national economy, such as a cleaner, garment sorter, or warehouse checker. (R. at 411–12). He therefore concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, since July 21, 2021, the date the application was filed (20 CFR 416.920(g))." (R. at 412).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III. DISCUSSION

Plaintiff argues that the ALJ erred when he found the state agency psychologists' opinions persuasive yet failed to properly account for all their opined limitations or explain why he did not. (Doc. 11 at 7–10). Particularly, Plaintiff says that the RFC does not include limitations for a work environment that is structured and predictable. (Doc. 11 at 7). The Commissioner argues that the ALJ properly accounted for Plaintiff's need for a structured and predictable work environment in the RFC, and his decision is supported by substantial evidence. (*See generally* Doc. 12).

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from [her] impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). When determining the RFC, the ALJ must evaluate several factors, including medical evidence, medical opinions, and the plaintiff's testimony. *Henderson v. Comm'r of Soc. Sec.*, No. 1:08-cv-2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010) (citing *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004)). In doing so, the ALJ must resolve conflicts in the record. *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). To that end, an ALJ "is only required to include in the residual functional capacity those limitations he finds credible and supported by the record." *Beckham v. Comm'r of Soc. Sec.*, No. 1:19-cv-576, 2020 WL 5035451, at *7 (S.D. Ohio Aug. 26, 2020) (quoting *Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 170 (6th Cir. 2020)). Again, this Court must affirm the ALJ's decision if it is supported by substantial evidence. *See Christine G. v. Comm'r of Soc. Sec.*, No. 2:22-cv-1969, 2023 WL 5717417, at *6 (S.D. Ohio Sept. 5, 2023) (stating that the court must affirm if substantial evidence supports the ALJ's decision, even if the court would have resolved conflicts in the record differently).

Dr. Irma Johnson reviewed Plaintiff's medical record on October 10, 2021. (R. at 589). Concerning his mental residual functional capacity, she opined Plaintiff had a limitation in understanding and memory; in sustained concentration and persistence; in social interaction; and in adaptation. (R. at 588–89). She opined that Plaintiff "can understand and recall instructions for simple repetitive tasks." (R. at 588). Similarly, she noted that Plaintiff "retains the concentration, persistence, and pace to carry out simple routine tasks that do not have fast paced demands," and "[h]e can relate superficially and infrequently with others." (R. at 588, 589). Lastly, she found that Plaintiff can "adapt to a structured and predictable work setting, with infrequent changes in responsibilities." (R. at 589). At the reconsideration level, Dr. Paul Tangeman adopted Dr. Johnson's opinion in full. (R. at 597–99).

Of their opinions, the ALJ stated:

> The State agency (DDS) psychological consultants found that the claimant had moderate mental limitations, including simple routine tasks that do not have fast paced demands, infrequent changes/responsibilities, and superficial, infrequent interactions with others. (Exs. 2A, 4A). These opinions are persuasive, as they are consistent with the claimant's longitudinal mental health record, and supported by the findings of Dr. Miller discussed above, in particular, the moderate limitations, essentially limiting him to unskilled work, with occasional social interactions. (Ex. 3F). As noted above, he was well oriented x4 and had no suicidal/homicidal ideations during treatment sessions. (Exs. 17F, 25F). Therefore, these opinions are persuasive.

(R. at 411).

Plaintiff claims that despite the ALJ finding the opinions persuasive, "[t]here was nothing in the residual functional capacity that addressed a need for a structured and predictable environment – particularly the structured aspect." (Doc. 11 at 9). The Undersigned does not agree. In relevant part, the ALJ limited Plaintiff to "performing simple, routine, repetitive tasks but not at a production rate pace, such as one has with assembly line work . . . [and] occasional changes in

duties and the work setting as well." (R. at 407). As explained below, this RFC determination sufficiently accounts for Plaintiff's need for a structured and predictable work setting.

First, the ALJ's limitation to simple, routine, and repetitive tasks, but not at production rate, and only occasional changes in duties and setting adequately addresses the opined need for a predictable work environment. Courts have found similar language sufficient for such an opinion. In *Harris v. Commissioner of Social Security*, the Court found an ALJ properly accounted for an opinion that a plaintiff "could do simple work in a predictable work environment where changes are infrequent" in an RFC that included limitations to "simple routine and repetitive tasks in a work environment free of fast paced production requirements involving only simple work with few, if any workplace changes . . . ." No. 2:17-CV-131, 2017 WL 5507618, at *3 (S.D. Ohio Nov. 17, 2017). And in *Borger v. Commissioner of Social Security*, the court found an opined limitation for a "routine, stable, and predictable work setting that doesn't undergo frequent changes" was sufficiently accommodated for in an RFC that included limitations to "simple, routine and repetitive tasks but not at a production rate pace" and "no more than occasional changes in the workplace tasks and setting, and any changes should be well explained in advanced." No. 3:20-CV-01930-JGC, 2021 WL 6297536, at *10 (N.D. Ohio Dec. 17, 2021), *report and recommendation adopted*, No. 3:20-CV-01930-JGC, 2022 WL 60212 (N.D. Ohio Jan. 6, 2022).

Second, the ALJ's limitation to simple, routine, and repetitive tasks, but not at production rate, and only occasional changes in duties and setting also adequately addresses the opined need for a structured work setting. Again, courts have found similar language sufficient to account for such opinions. *See, e.g.*, *Barger v. Comm'r of Soc. Sec.*, No. 1:21-CV-138, 2022 WL 2610486, at *20 (N.D. Ohio Apr. 21, 2022) (an RFC accommodated an opinion that a plaintiff could adapt in a structured environment with a limitation to no strict production requirements and only routine

7

workplace changes.), *report and recommendation adopted*, No. 21 CV 138, 2022 WL 2841877 (N.D. Ohio July 21, 2022); *Bond v. Comm'r of Soc. Sec.*, No. 1:15-CV-204-TRM-SKL, 2016 WL 7799316, at *7 (E.D. Tenn. June 14, 2016) ("The ALJ also included in her RFC determination that Plaintiff was limited to simple, routine and repetitive tasks . . . which accommodates Dr. Neboschick's opinions that Plaintiff could . . . sustain attention for simple, structured tasks for periods of two-hour segments . . . ."), *report and recommendation adopted*, No. 1:15-CV-204, 2016 WL 4548440 (E.D. Tenn. Sept. 1, 2016); *Paul S. v. Saul*, No. 2:20-CV-00080-MKD, 2020 WL 6386393, at *6 (E.D. Wash. Oct. 30, 2020) ("The RFC includes multiple limitations to account for a structured work environment, including a limitation to simple, routine tasks, and a limitation to a work environment that is predictable and with few work setting changes."); *Northrup v. Saul*, No. 1:19-CV-00211-RJC, 2020 WL 3802717, at *4–5 (W.D.N.C. July 7, 2020) (noting that even though "the ALJ did not include a specific limitation to a structured setting, her RFC assessment is not inconsistent with a structured setting" when it included a restriction to "avoid high volume or fast-paced work"). Therefore, the ALJ sufficiently accounted for the opined adaptation limitations.

Further, considering the above case law, Plaintiff's argument that a "structured and predictable" work setting is so distinct from the other opined limitations, including even "infrequent changes in responsibilities," that it must be accounted for separately in the RFC, or else explained, is unpersuasive. (Doc. 11 at 9). Indeed, courts frequently recognize the overlap in related limitations in an ALJ's RFC determination. *See, e.g., Bond*, 2016 WL 7799316, at *7 (noting a limitation to simple, routine and repetitive tasks accommodates opinions that related to understanding and remembering instructions, sustaining attention, making decisions, concentrating and persisting, and setting goals); *Borger*, 2021 WL 6297536, at *10 (holding an argument that a

8

limitation to occasional changes in the workplace tasks and setting is "separate from and inconsistent with the opined need for a stable and predictable work setting" is without merit).

Relatedly, Plaintiff argues that the state agency psychologists opined Plaintiff could engage in simple repetitive tasks, no fast-paced demands, and superficial interactions with others in separate sections from the section that opined he could "adapt to a structured and predictable work setting, with infrequent changes in responsibilities." (Doc. 13 at 4; *see* R. at 589). So, the ALJ needed to account for Plaintiff's adaptation limitations separately, as well. (Doc. 13 at 4). But this argument ignores that the ALJ acknowledged the opined limitation about "infrequent changes/responsibilities" and limited Plaintiff to "only occasional changes in duties and the work setting." (R. at 407). True, the ALJ did not word-for-word copy the opinions. But he was not required to do so. *See, e.g.*, *Poe*, 342 F. App'x at 157 ("Although the ALJ may not substitute his opinion for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding."); *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale."); *Cooper v. Comm'r of Soc. Sec.*, No. 2:18-CV-67, 2018 WL 6287996, at *5 (S.D. Ohio Dec. 3, 2018), *report and recommendation adopted*, No. 2:18-CV-67, 2019 WL 95496 (S.D. Ohio Jan. 3, 2019) ("Certainly, an ALJ is not required to mirror or parrot medical opinions verbatim.").

Ultimately, it is the ALJ's role, not a physician's, to determine the RFC. *Borgan v. Comm'r of Soc. Sec.*, No. 2:20-CV-6166, 2022 WL 109346, at *6 (S.D. Ohio Jan. 12, 2022), *report and recommendation adopted sub nom. Timothy Alan B. v. Comm'r of Soc. Sec.*, No. 2:20-CV-6166, 2022 WL 2612101 (S.D. Ohio Jan. 27, 2022). Because the ALJ found the state agency

9

psychologists persuasive and accounted for their opined limitations in the ultimate RFC, he was under no obligation to further explain his treatment of their opinions. The Undersigned can adequately trace his reasoning, enabling proper review. *Davis v. Comm'r of Soc. Sec.*, No. 2:19-CV-265, 2019 WL 5853389, at *5 (S.D. Ohio Nov. 8, 2019) (citation omitted) ("Ultimately, 'the ALJ must build an accurate and logical bridge between the evidence and his conclusion.'"), *report and recommendation adopted sub nom. Davis v. Comm'r of Soc. Sec.*, No. 2:19-CV-265, 2020 WL 1482318 (S.D. Ohio Mar. 27, 2020).

More still, the ALJ's ultimate RFC determination related to Plaintiff's mental limitations was supported by substantial evidence. In addition to the state agency psychologists' opinions, the ALJ considered Plaintiff's testimony that he suffered from poor sleep, mental health issues, and anger problems. (R. at 408, citing R. at 433–34, 438–40). The ALJ noted that Plaintiff had mental health treatment records spanning from 2021 to 2022 for depression and anxiety and that he received emergency mental health care at least twice, though both times he denied being suicidal. (R. at 408–09, citing *e.g.*, R. at 3942–58, 4159, 4202–03, 4232–33, 4421, 4429, 4433, 4437, 4450). In December 2021, a therapy note indicated he was "improving." (*Id.*, citing R. at 3942). And in July 2022 when Plaintiff's medications were refilled and adjusted, he admitted to feeling some anxiety but denied mood issues, anger, or depression. (R. at 409, citing R. at 4401). The ALJ further highlighted that Plaintiff received ongoing therapy from Mid-Ohio Psychological Services and had a goal of treating his depression and anxiety by developing emotional regulation skills to reduce worry, anger, and angry outbursts. (*Id.*, citing R. at 4425). The ALJ also considered, and found persuasive, consultative examiner Dr. Miller's opinion that Plaintiff had moderate mental limitations. (R. at 410, citing R. at 854–58). All said, because the ALJ considered Plaintiff's mental

impairments and the impact of those impairments on his ability to work, substantial evidence supports the ALJ's RFC finding.

Fundamentally, Plaintiff may wish "the ALJ had interpreted the evidence differently." *Glasgow v. Comm'r of Soc. Sec.*, No. 2:15-CV-1831, 2016 WL 2935666, at *7 (S.D. Ohio May 20, 2016), *report and recommendation adopted*, No. 2:15-CV-01831, 2016 WL 4486936 (S.D. Ohio Aug. 26, 2016), *aff'd*, 690 F. App'x 385 (6th Cir. 2017). But the law prohibits the Court from reweighing the evidence and substituting its judgment for that of the ALJ. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995)) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ.").

In sum, the ALJ properly accounted for the state agency psychologists' opinions, his reasoning is easily traced, and his ultimate RFC finding was supported by substantial evidence. Accordingly, the Undersigned finds no error.

**IV.    CONCLUSION**

Based on the foregoing, it is **RECOMMENDED** that the Court **AFFIRM** the Commissioner's decision.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specific proposed findings or recommendations to which objection

is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo* and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date:  June 6, 2024  /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE